IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 05-cv-00018-RPM

FORT PECK HOUSING AUTHORITY,

        Plaintiff,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,
SHAUN DONOVAN, Secretary of Housing and Urban Development, and
GLENDA GREEN, Director, Housing Management Div. Office of Native American Programs,
    Department of Housing and Urban Development, Office of Public and Indian Housing

        Defendants.

---

Amended MEMORANDUM OPINION AND ORDER
For this action and the following coordinated cases:
Civil Action No. 07-cv-01343-RPM; Civil Action No. 08-cv-00451-RPM;
Civil Action No. 08-cv-00826-RPM; Civil Action No. 08-cv-02573-RPM;
Civil Action No. 08-cv-02577-RPM, and Civil Action No. 08-cv-02584-RPM

---

On May 25, 2006, this court issued a Memorandum Opinion and Order, exercising jurisdiction granted by the Administrative Procedure Act, 5 U.S.C. §§ 701-706 (APA), invalidating HUD's determination that Fort Peck Housing Authority received excess block grant housing for low income families living on the Fort Peck Indian Reservation for the years 1998 through 2002, and ordering the defendants to take such administrative action as necessary to implement that ruling. The order declared 24 C.F.R. § 1000.318 invalid as contrary to 25 U.S.C. § 4152(b)(1), section 302 of the Native American Housing Assistance and Self-Determination

Act of 1996 (NAHASDA).  This court also ruled that even if the regulation could be reconciled with the statute, the policy of applying the regulation was an impermissible interference with the principles of Indian self-determination and tribal self governance.  This court did not address the plaintiff's arguments that HUD's demands for repayment made by its audit procedure denied the plaintiff a statutory right to a hearing and that HUD had no authority to recapture amounts already spent on affordable housing activities.

Almost four years later, on February 19, 2010, the Tenth Circuit Court of Appeals entered an Order and Judgment, reversing this court on the statutory interpretation to the extent that it was construed to establish a funding floor based upon the 1997 units.[1]  The appellate court said that a reduction equal to the number of dwelling units <u>no longer owned or operated by a Tribal Housing Entity</u> was valid.  The Tenth Circuit's ruling did not address HUD's elimination of units which were still owned by the plaintiff but which in HUD's view should have been conveyed.  In a footnote, the Circuit Court acknowledged that NAHASDA was amended in 2008 but did not comment on it.

In a Petition for Rehearing and for Rehearing En Banc dated April 10, 2010, Fort Peck pointed out that the Tenth Circuit's decision did not consider HUD's exclusion of units still owned and operated by Tribal Housing Entities, including those converted to low rent units, units not conveyed and demolished units that were replaced.  (#62-2).  Fort Peck also argued that because Congress expressly declined to apply the amendment retroactively and essentially

---

[1] *Fort Peck Housing Auth. v. HUD*, No. 06-1425 & 06-1447, 367 Fed.Appx. 884 (10th Cir. Feb. 19, 2010) (unpublished), *cert. denied*, ⸺ U.S. ⸺, 131 S.Ct. 347, 178 L.Ed.2d 148 (2010).

validated the regulation by legislation there is a strong inference that Congress recognized that the prior statute did not authorize the regulation.

The petition was denied by the Tenth Circuit without comment.

In amending the factors for determination of need in 25 U.S.C. § 4152(b)(1), Congress included the following paragraph:

> Subparagraphs (A) through (D) shall not apply to any claim arising from a formula current assisted stock calculation or count involving an Indian housing block grant allocation for any fiscal year through fiscal year 2008, if a civil action relating to the claim is filed by not later than 45 days after October 14, 2008.

25 U.S.C. § 4152(b)(1)(E).

Multiple civil actions were filed by other tribal housing entities and tribes before that deadline and all of the civil actions have been managed by coordination to address common issues. On August 31, 2012, this court issued a Memorandum Opinion and Order deciding those issues. (#89). Based on the administrative record, this court concluded that using the auditing authority in 25 U.S.C. § 4165 [NAHASDA section 405] and following Guidance 98-19, HUD arbitrarily and capriciously determined that the tribes should not have included in the FCAS units that they still owned and operated after expiration of the term provided for payment in the MHOA contracts without regard for the tribes' reasons for not conveying the property. Those agency decisions disregarded the terms of those contracts and rights of the tribes and tenants to interpret and apply the contract provisions.

Such arbitrary disallowance was contrary to the right to a hearing provided by 25 U.S.C. § 4161 [NAHASDA section 401] which was applicable to the disputed adjustments as HUD itself recognized in 24 C.F.R. § 1000.532. HUD's contention that no hearing was required because the inclusion of these disputed units is not a substantial non-compliance requiring a

hearing is wrong as it is contrary to a common sense reading of the statute and regulation. As described in the Memorandum Opinion and Order, there are differing factual circumstances justifying continued ownership of MHOA units which the tribes could have presented at a hearing.

On November 19, 2012, the court held a coordinated hearing to address procedures for determining the remaining issues. Following that hearing, the court ordered simultaneous briefing on the issues of HUD's recapture authority and the scope of this court's authority under the APA. The Court also ordered the Plaintiffs to file statements describing the relief being requested and ordered HUD to respond to the Plaintiffs' statements.

That briefing is now complete and a coordinated hearing was held on February 12, 2014. This opinion and order addresses the issues discussed at that hearing.

There is no merit to HUD's contention that 25 U.S.C. § 4161(d) [NAHASDA section 401(d)] divests this court of jurisdiction over the Plaintiffs' claims and provides for exclusive, original jurisdiction in the circuit courts of appeal. Notably, in 2004 Fort Peck had filed a petition for review in the Ninth Circuit Court of Appeals, and that action was dismissed pursuant to a Stipulation dated December 3, 2004, in which HUD agreed that "proper venue lies in the United States District Court for Colorado" and that it would "not dispute that 28 U.S.C. § 1331 confers jurisdiction over Fort Peck's APA claims." (#109-1). HUD now acknowledges that it is bound by that stipulation with respect to Fort Peck, but asserts that the stipulation does not preclude it from arguing that 25 U.S.C. § 4161(d) deprives this court of jurisdiction over the claims of other Plaintiffs. That argument lacks candor and, contrary to HUD's argument, the circuit courts of appeal do not have exclusive, original jurisdiction over any of these actions.

Circuit court jurisdiction under § 25 U.S.C. § 4161(d) is available only after HUD has provided a grant recipient with an opportunity for hearing on the question of substantial noncompliance, which HUD denied to these plaintiffs. "[S]ection 4161 merely authorizes the circuit court to hear challenges to determinations made under section 4161(a), following the requisite notice and hearing procedures set forth in that section." *Yakama Nation Housing Auth. v. United States*, 102 Fed. Cl. 478, 488 (Fed. Cl. 2011); *see also Lummi Tribe of Lummi Reservation v. United States,* 99 Fed. Cl. 584, 599 (Fed. Cl. 2011) (stating that it would be "anomalous" to conclude that section 4161 deprived it of jurisdiction "even where its terms – the filing of a record with a circuit court – have not been met.").

This court has jurisdiction under the APA to review the disputed agency actions. HUD's argument that the applicable statute of limitations is the four-year period found in 28 U.S.C. § 1658 is denied. APA actions are governed by the six-year limitations period provided in 28 U.S.C. § 2401(a). *Nagahi v. INS*, 219 F.3d 1166, 1171 (10th Cir. 2000).

There is no merit to HUD's contention that it had inherent authority to recoup grant overpayments from these Plaintiffs through administrative action. An agency has the inherent authority to seek recovery of funds mistakenly paid by filing a court action. *See United States v. Wurts*, 303 U.S. 414 (1938). That would provide due process to adjudicate disputed facts. Here, HUD has acted unilaterally and arbitrarily in demanding money from the Tribes through administrative action without a hearing. This court already determined that HUD's recapture authority was constrained by the pre-amendment version of 25 U.S.C. § 4161 and by 25 U.S.C. § 4165 and 24 C.F.R. § 1000.532. HUD has no authority to determine and collect overpayments by its own arbitrary action.

The applicable version of 24 C.F.R. § 1000.532 provides that "grant amounts already expended on affordable housing activities may not be recaptured or deducted from future assistance provided on behalf of an Indian tribe." HUD's own regulation recognizes that it could not demand return of grant funds the recipients had already expended on affordable housing activities.[2]

In sum, for Indian Housing Block Grant funds that HUD awarded to the Plaintiffs for fiscal years 2008 and earlier, HUD's recapture of purported grant overpayments was arbitrary, contrary to law, and in excess of its statutory authority.

HUD disputes that conclusion and alternatively argues that if HUD misapplied 24 C.F.R. § 1000.318 or failed to follow appropriate administrative process then this court should remand these actions to HUD for further proceedings. During oral argument on February 12, 2014, HUD's counsel represented that the process that the agency would make available upon remand would be the process set forth in 24 C.F.R. § 1000.336. That regulation does not provide for a hearing – it provides for an exchange of written information. That is the same process which HUD provided previously and which this court found was inadequate under the statutory scheme that existed before NAHASDA's amendment in 2008. Remand for further proceedings under 24 C.F.R. § 1000.336 would be futile and would further delay the resolution of these disputes.[3]

---

[2] 24 C.F.R. § 1000.532 was amended on December 3, 2012. *See* 77 Fed.Reg. 71513-01 (Dec. 3, 2012), 2012 WL 5986952. The pre-amendment version of the regulation applies to these actions.

[3] 24 C.F.R. § 1000.336 was amended as of May 21, 2007. The pre-amendment version applies to these disputes and that version did not address FCAS disputes.

The Plaintiffs seek orders requiring HUD to restore the grant funds that HUD recaptured illegally and injunctive relief prohibiting HUD from future recaptures. HUD disputes this court's authority to grant such relief.

With respect to the requested prospective relief, HUD argues that because the Plaintiffs' claims concern violations of the pre-2008 version of NAHASDA, their requests for prospective relief are moot. HUD asserts that the alleged unlawfulness of HUD's FCAS count determinations ended with the 2008 amendment to 25 U.S.C. § 4152(b)(1) [NAHASDA section 302(b)(1)]. HUD also argues that the court must apply the law in effect at the time the relief is granted. Those arguments fail. The amended version of NAHASDA does not govern these actions, which were filed before the deadline described in 25 U.S.C. § 4152(b)(1)(E). Because HUD exceeded its statutory authority under the pre-amendment version of NAHASDA, HUD must refrain from threatening recapture from the Plaintiffs and shall not act upon any threatened recapture with respect to grant funds that HUD awarded to the Plaintiffs for any fiscal year through fiscal year 2008.

HUD contends that this court lacks authority to order the restoration of grant funds already recaptured, arguing that such relief is unavailable because the APA's waiver of sovereign immunity, 5 U.S.C. § 702, does not encompass claims for money damages against the Government.

The scope of § 702's waiver of sovereign immunity depends on the distinction between "specific relief" and "compensatory, or substitute relief." *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261-62 (1999). "Damages are given to the plaintiff to substitute for a suffered loss, whereas specific remedies are not substitute remedies at all, but attempt to give the plaintiff

the very thing to which he was entitled." *Bowen v. Massachusetts*, 487 U.S. 879, 895 (1988) (citations and internal quotation marks omitted).

Throughout this litigation, HUD has asserted that the specific funds that were recaptured from the Plaintiffs cannot be returned because those funds were distributed to other grant recipients. HUD argues that providing the Plaintiffs with monetary relief from any other source would constitute "substitute relief" rather than "specific relief." HUD thus characterizes the Plaintiffs' request for the monetary relief as a claim for "money damages."

In 2006, this court accepted that argument and found that Fort Peck's request for monetary relief was "not an available remedy under the APA because it constitutes money damages contrary to the restriction in 5 U.S.C. § 702." (Order, Aug. 1, 2006, #46).

Upon reconsideration, this court finds that its authority under the APA includes the authority to require HUD to restore NAHASDA funds recaptured illegally from the Plaintiffs. The Plaintiffs have established that HUD's arguments rest on a faulty factual premise. That is, the Plaintiffs have shown that HUD's own practices and regulations demonstrate that HUD treats NAHASDA appropriations from different fiscal years as fungible. HUD does not dispute that unused appropriations remain in the program. The Plaintiffs asserted and HUD did not dispute that HUD routinely carries forward NAHASDA funds from a fiscal year and distributes such funds in subsequent fiscal years. The Plaintiffs asserted and HUD did not dispute that in FY 2008, HUD utilized over $26 million in FY 2008 funds to pay for underfunding that occurred prior to FY 2003.

HUD's own regulations are consistent with its practice of treating all NAHASDA funds as fungible. 24 C.F.R. 1000.536 addresses the question, "What happens to NAHASDA grant

funds adjusted, reduced, withdrawn, or terminated under § 1000.532?" and provides the following answer:

> Such NAHASDA grant funds shall be distributed by HUD in accordance with the next NAHASDA formula allocation.

24 C.F.R. § 1000.536.

The Plaintiffs' request for monetary relief is not a claim for damages for breach of a legal duty.  Rather, the Plaintiffs are seeking the return of funds that were taken from them and to which they remain entitled.  Under these circumstances, this Court's authority under the APA includes authority to order restoration of all funds illegally recaptured from the Plaintiffs.

HUD shall restore to the Plaintiffs the funds that HUD recaptured for any fiscal year through 2008.  Where funds have been set aside through escrow for a Plaintiff's benefit, HUD shall make restoration from the escrow funds.  For Plaintiffs with monetary claims exceeding the amount set aside or without funds set aside, HUD shall take action to restore the unlawfully recaptured funds through grant funding adjustments.

To determine the amount of funds to be restored, all low rent units shall be funded as rental units, without regard to whether such units were converted from Mutual Help Units or homeownership units to rental units.  HUD's policy of calculating funding for converted units according to a unit's pre-1997 status is arbitrary and capricious.  At the hearing on February 12, 2014, HUD's counsel attempted to justify HUD's policy by stating that when NAHASDA was enacted, there was an intention to continue funding according to contract rights in effect under the prior statute.  That explanation is contrary to the statutory interpretation that HUD advocated during the 2006 proceedings in this action and that HUD successfully argued on appeal to the United States Court of Appeals for the Tenth Circuit.  It is incongruous for HUD to rely on the

pre-1997 status quo as a rationale for imposing a funding limit with respect to converted units.

Based on the foregoing it is

ORDERED that defendants shall restore to the plaintiffs all funds that were illegally recaptured for fiscal years through and including FY 2008. The defendants' obligation to restore such funds is subject to the 6-year limitations period provided by 28 U.S.C. § 2401(a); it is

FURTHER ORDERED that with respect to grant funding for those fiscal years, HUD shall refrain from threatening recapture from the plaintiffs and shall not act upon any threatened recapture; it is

FURTHER ORDERED that on or before April 15, 2014, the plaintiffs in each civil action shall submit a proposed form of judgment, specifying the amounts to be paid to each tribe or tribal housing entity and the asserted sources of payment; and it is

FURTHER ORDERED that for any plaintiff who claims entitlement to payment for underfunding because HUD excluded units from that plaintiff's FCAS in a particular fiscal year, the proposed form of judgment should include a separate itemization for those amounts and may be submitted by May 15, 2014. An Appendix may be provided to explain the calculation of the amount owed and the record support for the claim.

The plaintiffs' requests for attorney's fees and costs will be addressed after entry of judgment.

Date: March 7, 2014

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior District Judge